**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-20162-MOORE/Elfenbein

**BELIEVE PURSUE LLC**,

    Plaintiff,

v.

**THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A"**,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Including a Temporary Injunction, a Temporary Transfer of the Defendant Internet Stores, a Temporary Asset Restraint, and Expedited Discovery (the "Application"), ECF No. [12]. The Honorable K. Michael Moore referred the Motion to me "to take all necessary and proper action as required by law and/or issue a Report and Recommendation with respect to Plaintiff's request for a preliminary injunction."  *See* ECF No. [14] at 11.  For the reasons explained below, the undersigned recommends that the Application, **ECF No. [12]**, be **GRANTED.**

I.    **FACTUAL BACKGROUND**

Plaintiff owns all exclusive rights in the design patent for its BELLABOOTY Belt (as defined in Plaintiff's Amended Complaint).  Plaintiff is the registered owner of the BELLABOOTY design patent, which is covered by U.S. Design Patent No. US D983,897 S (the "BELLABOOTY Patent").

Defendant, through the Internet based e-commerce store operating under the seller identity

identified on Schedule A hereto (the "Seller ID"), has advertised, promoted, offered for sale, sold, or imported goods embodying what Plaintiff has determined to be infringements, reproductions, or colorable imitations of the BELLABOOOTY Patent. *See* ECF No. [12-1] at ¶¶ 10-18.

Defendant is not now, nor has it ever been, authorized or licensed to use the BELLABOOTY Patent. *See id.* at ¶ 18.

Plaintiff investigated the promotion and sale of infringing versions of Plaintiff's patented products by Defendant. *See id.* at ¶¶ 13–16. Plaintiff accessed each of the e-commerce stores operating under Defendant's Seller ID, initiated the ordering process for the purchase of a product from the Seller ID embodying the BELLABOOTY Patent at issue in this action, and completed a checkout page requesting each product to be shipped to an address in the Southern District of Florida. *See id*. Plaintiff conducted a review and visually inspected the infringing BELLABOOTY items for which orders were initiated by Plaintiff's third-party investigator via the Seller ID, and determined the products were non-genuine, unauthorized versions of Plaintiff's products. *See id*. In the Amended Complaint, Plaintiff alleges a claim of design patent infringement, in violation of 35 U.S.C. § 271 (Count I).

Plaintiff then filed the *Ex Parte* Application for Entry of Temporary Restraining Order, Including a Temporary Injunction, a Temporary Transfer of the Defendant Internet Stores, a Temporary Asset Restraint, and Expedited Discovery (the "Application"). *See* ECF No. [12]. After finding that Plaintiff had met all four elements required to qualify for a temporary restraining order ("TRO"), Judge Moore granted the Application and issued a TRO on February 5, 2025. *See* ECF No. [14].

As required by Judge Moore's Order granting the TRO, *see* ECF No. [14] at 11–12, Plaintiff served Defendant with a copy of the Amended Complaint, the Order granting Plaintiff a

TRO, and all filings in this matter. *See* ECF No. [22]. Plaintiff effectuated that service by email and by posting the filings on Plaintiff's designated serving notice website. *See* ECF No. [22]. Plaintiff also served Defendant with a copy of the Court's Order Setting Preliminary Injunction Hearing, ECF No. [18], which had scheduled the preliminary injunction hearing in this matter for February 20, 2025, at 1:00 p.m. (the "Hearing"). *See* ECF No. [18]; ECF No. [22].

The Court held the Hearing on February 20 as scheduled. *See* ECF No. [30]. Plaintiff's counsel was present at the Hearing and presented oral argument on the matters raised in the Motion, directing the Court to its supporting evidence in the record. *See* ECF No. [30]. Defendant had notice of the Hearing, but despite the Court waiting 20 minutes past the designated start time, Defendant was not present at the Hearing. *See* ECF No. [30]. Defendant also has not responded to the Motion, did not seek an extension of time to file a response or a continuance of the Hearing, has not made any filing in this case, and has not appeared in this matter, either individually or through counsel. The Motion is now ripe for review.

## II.  LEGAL STANDARDS

The Federal Rules of Civil Procedure authorize courts to issue preliminary injunctions. *See* Fed. R. Civ. P. 65(a). To obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Before a court may issue a preliminary injunction, notice must be provided to the adverse party. *See* Fed. R. Civ. P. 65(a).

## III. DISCUSSION

The declarations Plaintiff submitted in support of its Application support the following conclusions of law:

A. Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or import into the United States for subsequent sale or use, products that infringe directly and/or indirectly the BELLABOOTY Patent. The documentation submitted by Plaintiff shows that an ordinary observer would be deceived into thinking that the Infringing Products were the same as one or more claims of the BELLABOOTY Patent.

B. Because of the infringement of Plaintiff's BELLABOOTY Patent, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Amended Complaint, Application, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendant can be heard in opposition unless Plaintiff's request for relief is granted:

1. Defendant owns or controls e-commerce stores and commercial Internet websites operating under its seller identification name and domain name which advertise, promote, offer for sale, and sell products bearing and/or embodying Plaintiff's patent, in violation of Plaintiff's rights; and

2. There is good cause to believe that more Infringing Products embodying Plaintiff's patent will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products.

C. The balance of potential harm to Defendant in restraining its trade in infringing products if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

D. The public interest favors issuance of the preliminary injunction to protect Plaintiff's patent interests and protects the public from being defrauded by the palming off of infringing goods as Plaintiff's genuine goods.

E. The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendant has violated federal patent laws, Plaintiff has good reason to believe Defendant will hide or transfer its ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

**IV. CONCLUSION**

Upon review of Plaintiff's Amended Complaint, Application, and supporting evidentiary submissions, the undersigned respectfully **RECOMMENDS** that Plaintiff's Application be **GRANTED**, according to the terms set forth below:

CASE NO. 25-CV-20162-MOORE/Elfenbein

**PRELIMINARY INJUNCTION**

(1) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order, are hereby temporarily restrained as follows:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products not authorized by Plaintiff that embody the design of the BELLABOOTY Patent;

b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the BELLABOOTY Patent; and

c. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (b).

(2) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of the BELLABOOTY Patent on or in connection with all Internet based e-commerce stores and Internet websites owned and operated, or controlled by them, including the Internet based e-commerce stores and Internet websites operating under the Defendant Internet Stores;

(3) Defendant shall not transfer ownership of the Internet based e-commerce stores and Internet websites operating under Defendant's Internet Stores during the pendency of this action, or until further order of the Court;

(4) Defendant shall preserve copies of all computer files relating to the use of any of the Internet based e-commerce stores and Internet websites operating under Defendant's Internet

CASE NO. 25-CV-20162-MOORE/Elfenbein

Stores and shall take all steps necessary to retrieve computer files relating to the use of the Internet based e-commerce stores and Internet websites operating under Defendant's Internet Stores that may have been deleted before the entry of this Order;

(5) The domain name registries for Defendant's Internet Stores, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order or prior to expiration of this Order, whichever date shall occur first, shall disable Defendant's Internet Stores and make them inactive and untransferable until further ordered by this Court.

(6) Those with actual notice of this Order, including any online marketplaces such as the Online Marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for Defendant's Internet Stores, and domain name registrars, shall within three (3) business days of receipt of this Order:

    a. disable and cease providing services for any accounts through which Defendant engages in the sale of Infringing Products directly or indirectly infringing the BELLABOOTY Patent, including any accounts associated with Defendant listed on the attached Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of Infringing Products directly or indirectly infringing the BELLABOOTY Patent; and

    c. take all steps necessary to prevent links to Defendant's Internet Stores identified on the attached Schedule A from displaying in search results, including, but not limited to, removing links to Defendant's Internet Stores from any search index.

(7) Defendant and any third party with actual notice of this Order who is providing

services for Defendant, or in connection with Defendant's websites at Defendant's Internet Stores or other websites operated by Defendant, including, without limitation, any online marketplace platforms such as the online marketplace platforms, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers, including PayPal, Alipay, Wish, Walmart, Joom, Alibaba, Ant Financial, Amazon, DHgate, eBay, Payoneer, PingPong, Coinbase, LianLian, AllPay, Union Mobile, World First, Paxful, Shopify, Stripe, OFX, SellersFund, third party processors and other payment processing service providers, shippers, and domain name registrars (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Plaintiff expedited discovery — based on the identifying information provided by Plaintiff's counsel including but not limited to, account IDs, legal names, and associated email addresses — including copies of all documents and records in such person's or entity's possession or control relating to:

    a.    the identities and locations of Defendant, its agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

    b.    the nature of Defendant's operations and all associated sales and financial information, including, without limitation, identifying information associated with Defendant's online marketplace accounts, Defendant's Internet Stores, and Defendant's financial accounts, as well as providing a full accounting of Defendant's sales and listing history related to their respective online marketplace accounts and Defendant's Internet Stores;

    c.    Defendant's websites and/or any online marketplace accounts;

    d.    the Defendant's Internet Stores or any domain name registered by

CASE NO. 25-CV-20162-MOORE/Elfenbein

Defendant; and

e.  any financial accounts owned or controlled by Defendant, including its agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, without limitation, PayPal, Alipay, Wish, WalMart, Joom, Alibaba, Ant Financial, Amazon Pay, DHgate, eBay, Payoneer, PingPong, Coinbase, LianLian, AllPay, Union Mobile, World First, Paxful, Shopify, Stripe, OFX, SellersFund or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

(8)  Defendant and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendant's assets until further ordered by this Court.

(9)  Western Union shall, within five (5) business days of receipt of this Order, block any Western Union money transfers and funds from being received by Defendant until further ordered by this Court.

(10)  The marketplace platforms shall, within five (5) business days of receipt of this Order, for Defendant or any of Defendant's online marketplace accounts or websites:

a.  locate all accounts and funds connected and/or related to Defendant, Defendant's online marketplace accounts or Defendant's websites, including, but not limited to, any Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, eBay, Walmart, and Wish accounts connected and/or related to the information listed in the attached Schedule A; and

   b. restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendant's assets until further ordered by this Court.

(11) The Financial Institutions, any banks, savings and loan associations, payment processors, or other financial institutions, for Defendant or any of Defendant's online marketplace accounts or websites, shall within five (5) business days of receipt of this Order:

   a. locate all accounts and funds connected and/or related to Defendant, Defendant's online marketplace accounts or Defendant's websites, including, but not limited to, any accounts connected and/or related to the information listed in Schedule A to this Order; and

   b. restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendant's assets until further ordered by this Court.

(12) Plaintiff may provide notice of these proceedings to Defendant by electronically publishing a link to the Amended Complaint, this Order, and other relevant documents on a website and by sending an e-mail to all e-mail addresses identified by Plaintiff and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendant receive from domain name registrars and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendant of the pendency of the action and afford them the opportunity to present their objections.

(13) Any Defendant that is subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Plaintiff or on shorter notice as set by this Court.

(14) The five thousand dollars ($5,000.00) bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Preliminary Injunction is terminated.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, on February 21, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record

CASE NO. 25-CV-20162-MOORE/Elfenbein

## Schedule A

| Defendant Seller | Defendant Online Marketplace |
|---|---|
| PUMPMUSCLE | https://www.temu.com/gym-ox-m-634418211198717.html |